IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHERYL FORTNER,                  )
                                                  )
        Plaintiff,                  )
                                                  )
vs.                                                  )         CASE NO.  2:04-cv-0318-TMP
                                                  )
DONNIE BREASEALE,  et al,      )
                                                  )
        Defendants.            )

MEMORANDUM OPINION

The magistrate judge filed his report and recommendation in this cause on July 21, 2006, recommending that the motion for summary judgment filed by defendants Blount County Board of Education, Donnie Breaseale, Allen Hargett, Andy Neill, Gregg Armstrong, David Standridge, Steve Morton, and Bruce McAfee, be granted.  Plaintiff filed her timely objections to the report and recommendation, and the task of reviewing the report and recommendation and objections was assigned to this judge.  Having now reviewed and considered *de novo* all the materials in the court file, including the report and recommendation and the objections to it, the court finds that the objections are due to be overruled and the report and recommendation adopted.

This case is a difficult and disturbing one.  It is not one that leaves the court feeling good about its resolution.  We now know that a trusted teacher and band director engaged in a sexual relationship with a fourteen-year-old student for several weeks, if not months, during the 2002-2003 school year at Hayden High School.  The focus of the present motion, however, is whether the school principal, school superintendent, and individual members of the school board can be held liable for being deliberately indifferent to that conduct.  This assessment necessarily involves examining the

evidence of what they knew and believed about the illegal relationship at the time they were called on to make certain decisions. As shown by the evidence here, that knowledge was often imperfect, conflicting, and ambiguous, so much so that the court cannot find that these defendants were deliberately indifferent to the abuse of the student.

Plaintiff has raised four broad categories of objections to the magistrate judge's report and recommendation:

> (1) [the court's] conclusion that the Defendants were neither on "actual notice" nor were "deliberately indifferent" to a substantial risk of harm to the Plaintiff is belied by the record; (2) this conclusion is based upon a failure to construe the record facts in a light most favorable to the Plaintiff; (3) the Court's conclusion is based upon the inadmissible hearsay testimony proffered by Defendant Hargett without any further corroboration in the record; and (4) the Court completely failed to address the Defendants' liability based upon Superintendent Breaseale's undisputed failure to investigate and ensure that appropriate remedial action was taken when he received notice of a substantial risk of harassment to the minor Plaintiff.

The court has examined each of these objections and the record relating to them, but finds that they are without merit. The court will examine each below.

Turning first to the what the court views as "procedural" objections, objections two and three, the court finds that the magistrate judge did not fail to construe the evidence most favorably to the plaintiff and did not consider inadmissible hearsay. True, a lot of the evidence offered in support of the motion for summary judgment consists of defendant Hargett's deposition testimony about conversations he had with other people in the course of carrying out his investigation, but this testimony is not hearsay. It was not offered to prove the truth of the matters asserted in the extrajudicial statements[1]; rather, the evidence is admissible to show what Hargett was told, what he

---

[1] It is interesting that plaintiff often commits the same error she contends the magistrate judge made. For example, at page 7 of her objections, she argues that Principal Hargett was told by

discovered, and what he believed about the facts he was charged to investigate. What Hargett was told by someone may well have been wrong, but it was part of the information he possessed in making the decisions whether to investigate further or suspect that something improper was occurring. What was in Hargett's mind, whether factually correct or not, is directly relevant to whether he was deliberately indifferent. Consequently, Hargett's reliance on many statements made to him by other chaperones, parents, and students was not inadmissible hearsay, and it was not error for the magistrate judge to consider the evidence in that context.

The court also disagrees that the magistrate judge failed to construe the evidence in the light most favorable to the plaintiff. Reading plaintiff's objections, makes clear that what she objects to is the failure of the magistrate judge to draw the *legal* conclusion that the evidence sufficiently established that Principal Hargett was on "actual notice" of a "substantial likelihood" that Turner was sexually harassing the student. The *factual* matters she identifies clearly were found and considered by the magistrate judge. For example, the magistrate judge construed the evidence favorably to show that the student victim was seen in a car with Turner in December 2002; the magistrate judge accepted that Hargett trusted Turner and regarded him as a "pillar of the community"; and he accepted that two chaperones reported to Hargett in April 2003 that it was "obvious" that a mutual attraction and infatuation existed between Turner and the female student.

---

chaperones Henderson and Acker (in fact, Acker never spoke to Hargett) that "all chaperones" shared the view that something improper was occurring between Turner and the student. To the extent that this statement is offered simply to show what was said to Hargett, it would be admissible. But if it is offered to prove the *fact* that "all chaperones" shared this view, it is clearly inadmissible hearsay. Two chaperones would not be able to testify to what other chaperones actually believed. Furthermore, because Acker did not participate in the meeting with Hargett (it was Henderson and Moody), she cannot testify even about what was said to Hargett because she lacks personal knowledge of the events at the meeting.

3

A careful reading of the report and recommendation makes clear that, on every *factual* or *evidentiary* point raised by plaintiff, the magistrate judge accepted the evidence most favorable to her.[2] True, the magistrate judge also accepted evidence proffered by the defendants when that evidence was not disputed by the plaintiff, but such factual evaluation is proper under Rule 56. Rule 56 does not require the court to ignore *undisputed* evidence simply because it hurts the non-moving party's position.

The court concludes, therefore, that plaintiff's objections two and three are meritless, and are due to be overruled. The magistrate judge properly considered all undisputed evidence that was properly admissible.

Turning to the plaintiff's first and most important objection, the court agrees with the magistrate judge that the evidence simply fails to show the requisite deliberate indifference for Title IX liability. Citing Gebser v. Lago Vista Independent School District, 524 U.S. 275, 118 S. Ct. 1989, 41 L. Ed. 2d 277 (1998), the magistrate judge correctly stated the standard the plaintiff must meet as requiring that "an official of the school district who at a minimum ha[d] authority to institute corrective measures on the district's behalf ha[d] actual notice of, and [was] deliberately indifferent to, the teacher's misconduct." Gebser, 524 U.S. 277, 118 S. Ct. 1989, 141 L. Ed. 2d 284. Although Principal Hargett could constitute that "official," this standard — requiring actual notice and deliberate indifference — is very demanding and difficult to meet. The plaintiff must present

---

[2]In some instances the magistrate judge rejected certain implications by the plaintiff that were not only unsupported by any evidence, but were affirmatively refuted by evidence. For example, plaintiff suggests that Principal Hargett did not speak to any of the girls who shared the room with the victim on the Florida band trip, when, in fact, Hargett testified explicitly that he spoke to two of them. Also, plaintiff suggests that, even after these allegations arose, Hargett continued to allow Turner to give private music lessons to the victim when, in fact, Hargett testified unequivocally that he instructed Turner that he was not to be alone with the girl.

4

evidence from which a reasonable jury could conclude <u>both</u> that Principal Hargett had "actual notice" of Turner's misconduct *and* that he was "deliberately indifferent" to it. Plaintiff does not disagree that this is the proper legal standard for assessing the potential liability of these defendants. The court agrees with the magistrate judge that the evidence simply does not meet this very high test.

The magistrate judge, and this court, acknowledge that Hargett's investigation of the allegations brought to him by the chaperones was inadequate, perhaps even negligent. But the test of Title IX liability is much more stringent than one for negligence. The evidence is quite clear that Hargett, after speaking with teachers, students, chaperones, and Turner himself, did not draw the conclusion that anything improper was occurring between Turner and the student. Hargett simply did not believe that anything more than the victim having a school-girl "crush" on Turner was going on. In hindsight, Hargett's conclusion was obviously wrong. But no evidence was presented that Hargett had "actual notice" of Turner's misconduct — Turner denied it, several other teachers and students found it improbable, and neither the victim herself nor anyone acting for her ever reported it or complained to Hargett. While this last fact does not justify Turner's crimes, or lessen the duty school officials have to protect their students, it does underscore, in the context of the court's application of the actual notice/deliberate indifference test, the absence of notice and knowledge Hargett and other school officials labored under.

Also, Hargett was not "deliberately indifferent." Although he certainly could have done more, talked to more people, and talked to the victim and her parents, the court cannot say that he turned a blind eye to the concerns expressed to him. He undertook an investigation — one that might be questioned in hindsight — attempting to assess the truthfulness of the allegations made and the seriousness of the problem. It was not improper, or even unusual, for Hargett to be skeptical of

5

the allegations, given that Turner presented himself well as a good and trustworthy teacher. Subjecting teachers to full-blown, probing, and stigmatizing investigations on the merest of allegations would be unreasonable and inappropriate in most instances. While school officials have a duty to look into all allegations, the level of inquiry and the intensiveness of the investigation necessarily turn on how probative the initial allegations are. In this instance, after hearing the initial allegations by Henderson and Moody (which Moody later regretted), Hargett was unable to find any other information corroborating the possibility that a trusted teacher was engaged in an improper relationship with this student. Whether Hargett might have done more, he did not act with deliberate indifference when he concluded that no evidence supported the concerns expressed by the two chaperones. Indeed, two other chaperones denied any impropriety, as did several students, and one of the complaining chaperones essentially recanted his allegations. Faced with this conflicting evidence, Hargett was not deliberately indifferent when he concluded that nothing wrong was going on. He may have been naive and foolish, even negligent, but he was not deliberately indifferent.

Finally, plaintiff argues that the magistrate judge failed to consider at all the argument that Breaseale, as superintendent of schools, had an obligation to look into the allegations independently of the investigation he assigned to Hargett. The court agrees with the magistrate judge that Breaseale acted reasonably by assigning the task of the investigation to Principal Hargett, Turner's immediate supervisor. Breaseale and the school board had the right to dictate the manner in which an investigation was carried out, as long as it was not deliberately indifferent. Assigning the investigation to Hargett was not improper or even unreasonable. Likewise, taking a verbal report from Hargett, rather than a written report, was not improper. Nothing in Title IX mandates a written report of the investigation, and it is difficult to see how putting in writing the same findings Hargett

verbally reported to Breaseale would have made any difference in this case. Hindsight is a wonderful luxury, but deliberate indifference must be judged on the basis of the information known to the officials at the time of their decisions.

The court finds that all of plaintiff's objections are due to be overruled. The standard of liability in this case is so high and difficult to meet, the court cannot say that Hargett and the other defendants had enough information to put them on "actual notice" of Turner's misconduct, or that they were deliberately indifferent to the information they had. Although they surely could have done more, that is not the test of liability. To hold the defendants liable simply because more could have been done would be to create something akin to strict liability under Title IX. Such an argument leads to the inevitable result that, whenever a student *is* being harassed, it means that something more could have been done to prevent it (or else it would not have happened), and that this alone proves Title IX liability. Instead, the correct legal test is whether, given the information they possessed and generated by reasonable investigation, were they on "actual notice" of the misconduct and deliberately indifferent to it. That simply is not the case here.

By separate order, the court will overrule the plaintiffs' objections and enter summary judgment for these defendants. The court also will refer the matter back to the magistrate judge for further proceedings with respect to plaintiffs' claims against defendant Turner.

The Clerk is DIRECTED to mail a copy of the foregoing to defendant Turner at his address of record.

DONE this 15th day of September 2006.

*Karon O. Bowdre*
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE